

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| UTILITIES OPTIMIZATION GROUP, L.L.C., § § § | |
| *Plaintiff*, § § | |
| v. § | CIVIL ACTION NO. 1:08-CV-68-TH |
| TEMPLE-INLAND, INC., § § § | |
| *Defendant.* § | |

## MEMORANDUM OPINION

On February 2, 2010 the Court entered an order summarily denying Defendant's pre-verdict motions for judgment as a matter of law on the issues of waiver, actual or apparent authority and damages and granting Defendants' motions for judgments as a matter of law on whether there was consideration for a new contract, fraudulent inducement, contract modification, and whether there had been a breach of the duty of good faith and fair dealing. The Court now issues this memorandum opinion setting out its analysis and conclusions.

Introduction

Plaintiff Utilities Optimization Group, L.L.C. ("Plaintiff" or "UO Group") sued Defendant Temple-Inland, Inc. ("Defendant" or "TIN") for monies still owed under two construction contracts. At issue was whether Plaintiff was entitled to additional remuneration for work performed in excess of the agreed upon amount where it relied upon assurances made by one of Defendant's employees

that the additional costs would be approved despite the contracts' express language requiring Plaintiff follow a different procedure.

On September 10, 2009, the Court found that the contracts were unambiguous, as a matter of law, on the proper field change procedure to be followed and that UO Group bore the risk of any defective plans provided to it by Temple-Inland. The Court also found that Plaintiff had offered sufficient evidence that Mr. Hospodar's signature constituted waiver on the part of the Defendant of those same requirements to proceed under that theory at trial.

Analysis and Conclusion

*A.    Legal Standard*

After a party has been fully heard on an issue during a jury trial, the court may enter a judgment as a matter of law on that particular claim or defense. Fed. R. Civ. P. Rule 50(a)(1). The court must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *Id.* Once a party makes a motion for judgment as a matter of law, the opposing party must be given an opportunity to cure any deficiency in its proof. *Echeverria v. Chevron USA Inc.*, 391 F. 3d 607, 611 (5th Cir. 2004). The burden is upon the party moving for the judgment as a matter of law and the Court must view all the evidence in the light most favorable to the nonmovant. *Russell v. McKinney Hosp. Venture*, 235 F. 3d 219, 222 (5th Cir. 2000). The Court shall indulge all reasonable inferences in favor of the nonmovant. *Id.* The Court shall grant a motion for judgment as a matter of law only if there is a complete absence of pleading or proof on an issue

material to the claim or defense. *Id.* However, a mere scintilla of evidence is not sufficient to present a question for the jury. *Hunter v. Knoll Rig & Equip. Co.*, 70 F.3d 803, 808 (5th Cir. 1995). In considering a motion for judgment as a matter of law, the Court cannot make credibility determinations or weigh the evidence. *Russell*, 235 F. 3d at 222; *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). The court shall review all the evidence in the record. *Reeves*, 530 U.S. at 150.

With these standards in mind, the Court now turns to the Defendant's motions for judgment as a matter of law.

*B. Authority to Waive and Waiver*

Both contracts at issue during this trial contained explicit language that UO Group "shall not exceed the commitment on the face of this order without written authorization in the form of a field change order/authorization form." (Def. Tr. Ex. 13 (Purchase Order No. 07-61731)) Both purchase orders then state that "[i]t is the responsibility of the supplier [UO Grouop] to secure approval for any changes to the work scope provided you for this order. Any changes that alter the value of this work must be documented on the above mentioned form." *Id.* Each purchase order also listed a not-to-exceed contract price. UO Group asserted that Temple-Inland waived these provisions when its employee, Steve Hospodar, signed the invoices which exceeded the contract price. Thus, Plaintiff had the burden of proving the following at trial: (1) that Steve Hospodar had the actual or apparent authority to waive the contract provision on Temple-Inland's behalf; (2) that he knew of the contract provision; (3) that his conduct was so inconsistent with an intent to claim it that he impliedly intended to waive it; and (4) that UO Group relied upon his waiver to its detriment. At the close of

3

Plaintiff's evidence, Defendant moved for judgments as a matter of law that Steve Hospodar could not have had actual or apparent authority to waive the provisions and that even if he had such authority, neither provision was waived.

  (1)  Authority to Waive

An agency relationship may be demonstrated by "written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority)." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 357 (5th Cir. 2003) (quoting *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F. 2d 170, 181 (5th Cir. 1989). *See also Arriba Limited v. Petroleos Mexicanos*, 962 F.2d 528, 536 (5th Cir. 1992). Apparent authority arises through acts of participation, knowledge or acquiescence by the principal that clothe the agent with the indicia of apparent authority. *Ins. Co. N. Am. v. Morris*, 981 S.W. 2d 667, 672 (Tex. 1998) (citations omitted). "Only the conduct of the principal, leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of an agent." *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W. 2d 425, 428 (Tex. 1977). To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority. *Ames v. Great S. Bank*, 672 S.W. 2d 447, 450 (Tex. 1984). One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority it purports to exercise. *See Nationsbank, N.A. v. Harry Dilling*, 922 S.W. 2d 950 (Tex. 1996). For a principal to be charged for the conduct of its agent, the principal must have affirmatively held out the agent as possessing authority or must have knowingly and voluntarily permitted the agent to act in an

4

unauthorized manner. *Id.*

In this case, there is sufficient evidence to raise a question of fact for the jury regarding whether Steve Hospodar had the actual or apparent authority to waive the contract provisions. The purchase orders state that the change order approvals shall be coordinated through the Temple-Inland representative identified on the purchase order - Steve Hospodar. A reasonable jury could find that by naming Steve Hospodar in this way on the purchase order, Temple-Inland imbued him with the apparent authority to waive the change procedure for which he was responsible. The same is true for the not-to-exceed price. Co-commitment with the authority to waive the procedures for getting written authorization prior to changing the value of the work is the authority to approve additional costs. There was also evidence that Steve Hospodar had approved additional cost increases in other jobs and that those were approved after the fact by Temple-Inland. Given that there are facts that could lead a jury to find that Steve Hospodar had the actual or apparent authority to waive these contract provisions, the Court cannot enter a judgment as a matter of law that he did not.

2) Waiver

Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *In re Epic Holdings, Inc.*, 985 S.W.2d 41, 57 (Tex. 1998). A party may waive contractual rights that are for its own benefit. *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App. – Corpus Christi 1986, no writ.). A waiver presupposes full knowledge of an existing right. *Massachusetts Bonding & Ins. Co.*, 416 S.W.2d 396, 401 (Tex. 1967). A party seeking to establish waiver of rights under a contract must prove an intent to relinquish the known right. *Huffington v. Upchurch*, 532 S.W.2d 576, 580 (Tex. 1976). The party

asserting the affirmative defense of waiver must also establish that it relied upon the other party's waiver. *Cox v. Bancoklahoma Agri-Service Corp.*, 641 S.W.2d 400, 404 (Tex. App. – Amarillo 1982). Where the party seeks to establish waiver by implication, the party must establish that the party was misled by the conduct to its prejudice. *Barua v. County of Dallas*, 100 S.W.3d 629, 634 (Tex. App. – Dallas 2003, pet. denied).

Construing the facts in the light most favorable to Plaintiff, the Court finds that it has offered more than a scintilla of evidence as to each of the elements of waiver. First, as to Mr. Hospodar's knowledge of the contract requirements, Plaintiff showed the jury an email in which Steve Hospodar discussed the need to obtain a change order in another contract. As to his knowledge that the not-to-exceed price had been met when he signed the time sheets, Ben Snyder, UO Group's on-site representative, testified that he had daily conversations with Steve Hospodar about delays and excessive man hours and night shifts. A reasonable jury could conclude that these conversations gave Hospodar knowledge that UO Group was approaching and would exceed its contract price. Second, a jury might reasonably find Hospodar's conduct inconsistent with the intent to claim the waiver or not-to-exceed provisions given that he testified he expected UO Group to be paid based on the invoices that he signed. He also testified he did not inquire about a field change order form after the fact although Plaintiff offered evidence that in a similar situation he had approved additional remuneration to a contractor and then inquired about the field change order requirements at a later date. A reasonable jury could conclude that by not pursuing a field change order after he had signed the time sheets, he indicated that he had waived that requirement. Finally, Plaintiff's employees testified that they relied upon Hospodar's signature on the time sheets and alleged assurances that they would be paid in continuing their work despite the additional man hours and costs associated

with the project. Viewed in the light most favorable to Plaintiff, it has presented sufficient evidence to preclude this Court ruling as a matter of law that they have no viable breach of contract claim under a theory of waiver.

*C. Fraud*

Fraud occurs where (1) a party makes a material misrepresentation (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injuries. Texas Pattern Jury Charge § 105.2. A misrepresentation is a promise of future performance made with an intent, at the time of the promise, not to perform as promised. Texas Pattern Jury Charge § 105.3B. Therefore, UO Group would have to prove by a preponderance of the evidence that Steve Hospodar's signature on the time sheets was a promise on behalf of Temple-Inland to pay the amount invoiced and that when he signed the time sheets he knew, or should have known, that Temple-Inland would not pay them. Plaintiff presented no evidence that Hospodar knew or should have known that Temple-Inland would not pay UO Group. Instead, Plaintiff sought to prove that Hospodar had the authority to waive contract provisions and that he intended to waive them when he signed the time sheets. In the absence of any evidence of fraudulent intent, Temple-Inland did not commit fraud as a matter of law.

*D. Breach of Duty of Good Faith and Fair Dealing*

UO Group claims that Temple-Inland breached its duty to deal with UO Group in good faith and with fair dealing. This duty only arises where there is a special relationship between the parties,

7

analogous to a fiduciary relationship. It does not arise between parties dealing in arm's-length transactions. Texas Pattern Jury Charge 103.1 (Comment). A special relationship is an extra-contractual relationship, generally recognized in two circumstances. *K3C Inc. v. Bank of Am. N.A.*, 2004 F. App'x 455, 461 (5th Cir. 2006) (citing *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.— Houston [14th Dist.] 1998, pet. denied)); *Natividad v. Alexis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994). First, a special relationship may arise where the parties possess unequal bargaining positions and one party can easily take advantage of the other party. *Bass*, 931 F. Supp. at 534 (citing *Affiliated Capital Corp. v. Southwest, Inc.,* 862 S.W.2d 30, 34 (Tex. App.—Houston [1st Dist.] 1993, writ denied)); *Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 (5th Cir. 1990)). Second, a special relationship may arise if a recognized fiduciary relationship or a "formal relationship" requires trust and confidence. *Bass*, 931 F. Supp. at 534 (citing *Jhaver,* 903 F.2d at 385). This second category of special relationship is sometimes referred to as a "confidential relationship." *Crim Truck &Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992) ("such informal fiduciary relationships have been termed 'confidential relationships'"); *Lovell v. W. Nat. Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. 1988) (citing *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962)). Within this category, "[f]ormal relationships may arise from longstanding dealings, personal, social, or domestic, that justify the injured party's reliance." *Bass*, 931 F. Supp. at 534 (quoting *Jhaver*, 903 F.2d at 385); *Fed. Deposit Ins. Corp. v. Perry*, 854 F. Supp. 1248, 1259 (E.D. Tex. 1994) (stating that a special relationship may result from "a long-standing, special relationship of trust and confidence) (Parker, J.); *see Lovell*, 754 S.W.2d at 302.

There is no evidence that Temple-Inland has such substantially greater bargaining power that it had a special duty towards UO Group. The question is whether the UO Group's recurring services

contract with Temple-Inland and their previous dealings were such as to create a long-standing, special relationship of trust and confidence. As the Texas Supreme Court has noted, "in order to give full force to contracts, we [courts] do not create such a relationship [fiduciary or confidential] lightly." *Meyer v. Cathey*, 167 S.W. 3d 327, 331 (Tex. 2005). In *Meyer*, the Supreme Court of Texas held that earlier, arm's length transactions between two business associates were insufficient to give rise to a confidential relationship. The Court reasoned that "these earlier projects were arm's-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary basis." *Id.* (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W. 2d 276, 288 (Tex. 1998)). There is no evidence that the prior transactions between UO Group and Temple-Inland were anything but arm's-length transactions exercised for the mutual benefit of both parties. For the projects at issue in this case, UO Group submitted competitive bids and was awarded the projects as a result. Nor does UO Group's subjective feelings of trust transform their business relationship into a special relationship. *See Ins. Co. of N. Am. v. Morris*, 981 S.W. 2d 667, 674 (Tex. 1998) ("Mere subjective trust does not transform arm's length dealing into a fiduciary relationship.") (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W. 2d 171, 177 (Tex. 1997)). The parties do not dispute their earlier dealings. The conflict is over the legal significance of that relationship. Therefore, it is a matter of law and not a question for the jury. The Court rules that as a matter of law, UO Group and Temple-Inland did not have a special relationship.

As there was no special relationship giving rise to a duty of good faith and fair dealing, Temple-Inland could not have breached such an obligation to UO Group. UO Group's claim for breach of the duty of good faith and fair dealing is therefore dismissed with prejudice.

E.  *Measure of Damages*

Invoices are sufficient and competent evidence to prove damages in a breach of contract case. *See Collins v. Guinn*, 102 S. W. 3d 825 (Tex. App. 2003). Generally the measure of damages when a party breaches a contract is the amount necessary to put the aggrieved party in to the position in which it would have been had the contract been performed. *See e.g.*, *Smith v. Kinsolow*, 598 S.W. 2d 910, 913 (Tex. App. – Dallas 1980). When the jury found that the not-to-exceed price on the contracts had been waived, the contract's other provisions providing for payment on a time and material basis remained in effect. Under the contracts, the proper way to seek payment for time expended was through signed time sheets. As the invoices were generated from appropriately signed time sheets, they were an appropriate measure of damages for the jury to consider.

F.  *Exemplary Damages*

The Court *sua sponte* issued a judgment as a matter of law on the question of exemplary damages. A plaintiff may only recover exemplary damages where it establishes by a preponderance of the evidence that the defendant caused the harm and by clear and convincing evidence that the harm resulted from malice, fraud or gross negligence. *See e.g.*, Tex. Pattern Jury Charge § 115.38: Predicate Question and Instruction on Award of Exemplary Damages (2008 ed.). Plaintiff has presented no evidence of malice, fraud or gross negligence. Therefore, there is no evidence that would allow a reasonable jury to award exemplary damages under Texas law.

## Conclusion

For the foregoing reasons, the Court denied the following motions for judgment as a matter of law:

*Defendant's Motion for Judgment as a Matter of Law for lack of evidence on actual or apparent authority* [Clerk's Docket No. 155], filed on January 26, 2010; *Defendant's Motion for Judgment as a matter of Law for lack of evidence on waiver* [Clerk's Docket No. 159];*Defendant's Motion for Judgment as a Matter of Law for lack of evidence on damages* [Clerk's Docket No. 163]; *Defendant's Motion for Judgment as a Matter of Law for lack of evidence on actual or apparent authority* [Clerk's Docket No. 164]; *Defendant's Motion for Judgment as a Matter of Law for lack of evidence on waiver* [Clerk's Docket No.165]; and, *Defendant's Motion for Judgment as a Matter of Law on Waiver without Modification* [Clerk's Docket no. 166].

For the foregoing reasons, the Court granted the following motions for judgment as a matter of law:

*Defendant's Motion for Judgment as a matter of Law for lack of evidence on consideration for a new contract* [Clerk's Docket No. 156]; *Defendant's Motion for Judgment as a Matter of Law for lack of evidence on fraudulent inducement* [Clerk's Docket No. 157]; *Defendant's Motion for Judgment as a Matter of Law for lack of evidence on contract modification* [Clerk's Docket No. 158]; and, *Defendant's Motion for Judgment as of Law for lack of evidence on a duty of good faith and fair dealing* [Clerk's Docket No. 160].

**SO ORDERED.**

**SIGNED** this the **5** day of **March, 2010.**

_____
Thad Heartfield
United States District Judge